J. S12044/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| JAMES E. GREER, SR., | : | No. 573 MDA 2017 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, February 28, 2017,
in the Court of Common Pleas of York County
Criminal Division at No. CP-67-CR-0007036-2015

BEFORE:  LAZARUS, J., KUNSELMAN, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED APRIL 10, 2018**

James E. Greer, Sr., appeals from the February 28, 2017 judgment of sentence entered in the Court of Common Pleas of York County following his conviction in a jury trial of possession with intent to deliver a controlled substance (heroin) ("PWID").[1]   The trial court imposed a sentence of imprisonment of 11½ to 23 months.  We affirm.

The trial court provided the following factual history:

> On January 19, 2017, Officer Zachary Pelton took the stand and testified that this case involved a confidential informant (hereinafter: CI) who received payment.  At Pelton's instruction, the CI placed a phone call to 717-758-[XXXX], which was a number supplied by the CI.  Officer Pelton heard a male voice on the other end of the phone call and, at the conclusion of that call, was left with the expectation that the CI was to proceed to Li's Kitchen to

---

[1] 35 P.S. § 780-113(a)(30).

purchase heroin. The CI referred to the caller by the street name of "Supreme." Officer Pelton proceeded to search the CI's pockets and any other places in which small objects could be secreted. No strip search was performed because, as Officer Pelton opined, if the CI were to have reached any place intimate then that would have raised red flags for the officers. Following the search, the CI was turned over to Detective Shaffer and, up to this point, the CI was never out of Pelton's view or control. Shaffer provided official funds and transported [sic] the meet location. Pelton also proceeded to the location where he set up surveillance. Despite having a clear and unobstructed view, Officer Pelton never saw the CI meet with anyone, nor did he observe the CI; however, after the operation, Detective Shaffer turned over $20.00 of official funds and 2 yellow glassine baggies containing heroin. The parties stipulated that, if called to testify, Nicole Blasovich, of the Pennsylvania State Bureau of Police Forensic Services, would testify that the baggies contained heroin. No fingerprinting or DNA analysis was performed in this case and the CI and Detective Shaffer were not wearing gloves. Furthermore, the initiating phone call was not recorded, nor was the CI wearing a wire.

On cross-examination, Officer Pelton testified that it was his believe [sic] that the CI, an addict, was clean at the time of the transaction, but that drug testing was not performed to confirm this. Additionally, it was established on cross-examination that [a]ppellant is not "Supreme[.]" The phone that was called by the CI was believed to belong to Darryl Austin who is "Supreme." Finally, during cross, Officer Pelton testified that he had made sure there was no money on the CI before the CI was supplied with official funds.

The next witness to take the stand was Detective Andrew Shaffer who testified that his role was to transport the CI during the operation. Having received the CI from Officer Pelton following the search of the CI, Shaffer stated that the CI was

never out of his control. Shaffer gave the CI $40.00 of official funds.[Footnote 2] Shaffer then transported the CI to the meet location in Shaffer's vehicle, which was searched prior to the operation. Once on scene and the CI was released from Shaffer's vehicle, Shaffer was able to see the CI walking the whole way. Detective Shaffer told the jury that the CI was observed at all times by himself or Detective Nadzom. Detective Shaffer also told the jury that he never observed the CI to meet anyone else, pick anything up off of the ground, or shift his clothing while proceeding to and returning from the meeting. Shaffer did not see the actual hand-to-hand exchange. However, upon the CI's return to Detective Shaffer, the CI handed over 2 baggies of suspected heroin and $20.00 of the $40.00 that Shaffer had previously given to the CI. Finally, Detective Shaffer stated that the CI was never out of his control before or after Shaffer turned over the suspected heroin to Officer Pelton.

> [Footnote 2] Earlier in his testimony, Detective Shaffer reported that he had given the CI $20.00 of official funds. However, at a later point in his testimony, Shaffer stated that this was a mistake and he had initially given the CI $40.00 of official funds.

The third and final Commonwealth witness was Detective Scott Nadzom who testified that he performed surveillance for this buy-walk. Nadzom stated that he had a clear and unobstructed view of Li's Kitchen. Nadzom testified that Shaffer advised him over the radio when the CI exited the vehicle and, thereafter, Nadzom observed the hand-to-hand transaction between the CI and [a]ppellant. Detective Nadzom stated that the only person the CI had contact with was [a]ppellant. In fact, Nadzom never saw the CI meet with anyone else, pick anything up, or fuss about his own clothing at any point during the operation. According to Nadzom, the CI was under constant observation by law enforcement. Nadzom then introduced photos he

had taken of [a]ppellant on the day in question. Nadzom stated that the photos were only taken for identification purposes and that he observed the hand-to-hand transaction with his naked eyes and binoculars. On cross-examination, Nadzom admitted that he never saw actual packets passed between [a]ppellant and the CI.

Trial court opinion, 9/6/17 at 2-5 (citations to notes of testimony omitted).

The trial court set forth the following procedural history:

On January 20, 2017, a jury of [a]ppellant's peers found him guilty of [PWID]. On February 28, 2017, [a]ppellant was sentenced to eleven-and-one-half to twenty[-]three months of incarceration plus the costs of prosecution. On March 1, 2017, Jennifer M. Smith was appointed to represent [a]ppellant for purposes of appeal. On March 30, 2017, [a]ppellant filed a Notice of Appeal of the Sentence of February 28, 2017. By way of an Order docketed on April 3, 2017, pursuant to the Pennsylvania Rules of Appellate Procedure, Rule 1925(b), [a]ppellant was directed to file a statement of matters complained of on appeal. [] Appellant filed his manifestly untimely Statement of Errors Complained of Pursuant to 1925(b) on June 28, 2017. We nonetheless treat this filing as timely in light of Attorney Smith's post-sentencing appointment and the unavailability of the trial transcript until the period for a timely statement of matters had already lapsed. The [c]ourt is all too aware of the difficulty occasioned by familiarizing oneself with a case via a cold transcript.

*Id.* at 1-2 (footnote 1 omitted). The record reflects that the trial court filed its Rule 1925(a) opinion on September 6, 2017.

Appellant raises the following issues for our review:

I.      Whether the Commonwealth presented sufficient evidence to support appellant's delivery of heroin conviction?

> II. Whether the weight of the evidence presented by the Commonwealth was sufficient to support appellant's delivery of heroin conviction?

Appellant's brief at 5 (full capitalization omitted).

Appellant first challenges the sufficiency of the evidence to sustain his PWID conviction. It is well settled that when challenging the sufficiency of the evidence on appeal, that in order to preserve that issue for appeal, an appellant's Rule 1925(b) statement must specify the element or elements upon which the evidence was insufficient. *Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa.Super. 2009), *appeal denied*, 3 A.3d 670 (Pa. 2010) (citation and internal quotation marks omitted).

In his Rule 1925(b) statement, appellant frames his sufficiency challenge as follows: "Whether there was sufficient evidence presented at trial for a conviction." (Appellant's "statement of errors complained of on appeal pursuant to 1925(b)," 7/28/17 at 1, ¶ 1 (full capitalization omitted).) Because appellant failed to specify the element or elements upon which he now claims the evidence was insufficient, appellant waives this issue on appeal. *See Gibbs*, 981 A.2d at 281.

Nevertheless, we note that a reading of appellant's eight-sentence argument on this issue[2] reveals that appellant challenges the credibility of the police officers involved in the undercover operation. (Appellant's brief at 9.) In so doing, appellant challenges the weight of the evidence, not its sufficiency. *See*, *e.g.*, *Commonwealth v. Wilson*, 825 A.2d 710, 713-714 (Pa.Super. 2003) (a review of the sufficiency of the evidence does not include a credibility assessment; such a claim goes to the weight of the evidence); *Commonwealth v. Gaskins*, 692 A.2d 224, 227 (Pa.Super. 1997) (the fact-finder makes credibility determinations, and challenges to those determinations go to the weight of the evidence, not the sufficiency of the evidence).

In his second issue on appeal, appellant raises a weight of the evidence claim. In order to raise a weight claim on appeal, however, Pennsylvania Rule of Criminal Procedure 607 requires an appellant to raise the claim with the trial judge in a motion for a new trial "(1) orally, on the record, at any time before sentencing; (2) by written motion at any time

---

[2] We further note that appellant failed to provide any record citations to support his claim. Notwithstanding appellant's failure to preserve this issue in his Rule 1925(b) statement which resulted in waiver of the issue on appeal, appellant's failure to provide record citations to support his claim would also result in waiver. *See* Pa.R.A.P. 2119(c); *see also Commonwealth v. Einhorn*, 911 A.2d 960, 970 (Pa.Super. 2006) (reiterating that an appellate brief must provide record citations and citations to any relevant supporting authority, that this court will not become the counsel for an appellant, and that this court will not consider issues that are not fully developed in the brief (citation omitted)).

before sentencing; or (3) in a post-sentence motion." Pa.R.Crim.P. 607(A). "The purpose of this rule is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived." Pa.R.Crim.P. 607, comment.

Our review of the certified record before us reveals that appellant failed to raise his weight claim with the trial court in a motion for a new trial orally, on the record, prior to sentencing; by written motion prior to sentencing; or in a post-sentence motion. Accordingly, appellant waives his weight claim on appeal.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/10/2018