**COMMONWEALTH of Pennsylvania**

v.

**LaFaye GASKINS, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 3, 1997.

Filed April 8, 1997.

■

David S. Rudenstein, Philadelphia, for appellant.

Peter J. Gardner, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before KELLY, FORD ELLIOTT, and OLSZEWSKI, JJ.

OLSZEWSKI, Judge:

On a cold afternoon in February of 1989, LaFaye Gaskins, appellant herein, shot Albert Dodson once at close range in the face and left him to die in an abandoned house. Four days later, the victim's frozen body was found and, following a thorough police investigation, appellant was arrested and charged with murder, robbery and possession of an instrument of crime (PIC).

In May of 1990, following a trial by jury, appellant was found guilty of the charges brought against him. Post-verdict motions were filed and denied. Thereafter, appellant's attorney, Colie Chappelle, Esquire, was permitted to withdraw as counsel.

Attorney Jack McMahon was then appointed to represent appellant. Supplemental post-verdict motions were subsequently filed and denied. Appellant was then sentenced to a term of life imprisonment for the murder conviction as well as concurrent terms of five-to-ten years imprisonment for the robbery conviction and one-to-five years imprisonment for the PIC conviction.

A timely appeal was taken to this Court, alleging the same purported trial court error that was the subject of the post-verdict motions. On direct appeal, appellant continued to be represented by Attorney McMahon. In an unpublished memorandum opinion, judgment of sentence was affirmed on November 6, 1992.

Appellant then filed a *pro se* motion pursuant to the Post–Conviction Relief Act (PCRA), 42 Pa.C.S.A. § 9541 *et seq.* Present counsel, David Rudenstein, Esquire, was appointed to represent appellant. On November 30, 1994, Attorney Rudenstein filed an amended petition which alleged that prior counsel rendered ineffective assistance for failing to challenge: (1) the sufficiency of the evidence presented to convict appellant; (2) the weight of the evidence presented to convict appellant; and (3) the accuracy of the jury instruction pertaining to accomplice liability. Said petition was supplemented by memorandum of law on January 23, 1995. On October 20, 1995, pursuant to a Commonwealth motion, appellant's petition was dismissed without a hearing. This appeal follows.

■ When examining a post-conviction court's denial of relief, our scope of review is limited to a determination of whether the court's findings are supported by the record and are otherwise free of legal error. *See, e.g., Commonwealth v. Legg,* 447 Pa.Super. 362, 364–66, 669 A.2d 389, 391 (1995); *Commonwealth v. Blackwell,* 436 Pa.Super. 294, 303–05, 647 A.2d 915, 920 (1994). The findings of the post-conviction court will not be disturbed unless they have no support in the record. *Id.*

■ Additionally, we note that there is no absolute right to a hearing pursuant to the Post Conviction Relief Act. Rather, the post-conviction court may elect to dismiss a petition if it has thoroughly reviewed the claims presented and determined that they are utterly without support in the record. *See, e.g., Blackwell,* 436 Pa.Super. at 305–08, 647 A.2d at 921; *Commonwealth v. Granberry,* 434 Pa.Super. 524, 531–33, 644 A.2d 204, 208 (1994).

■ All of appellant's claims in the instant appeal relate to the quality of prior counsel's representation. We will therefore outline the standard of review at the outset. In order to prevail, appellant must demonstrate that the underlying claim is of arguable merit, that counsel's actions had no reasonable basis designed to effectuate his interests and that counsel's actions prejudiced him. *See, e.g., Commonwealth v. Lam,* 453 Pa.Super. 497, 507–09, 684 A.2d 153, 158 (1996); *Commonwealth v. Jones,*

546 Pa. 161, 175, 683 A.2d 1181, 1188 (1996). A presumption of effectiveness exists, so the burden of establishing ineffectiveness rests squarely upon appellant. *Jones,* 546 Pa. at 175, 683 A.2d at 1188.

■ Initially, appellant posits that both trial and direct appeal counsel were ineffective in not challenging the sufficiency of evidence presented at trial to convict him. This issue is without merit and can afford appellant no relief.

■ When assessing whether the Commonwealth proffered sufficient evidence to sustain a conviction, this Court must view the evidence and all reasonable inferences derived therefrom in the light most favorable to the Commonwealth, as verdict winner, and determine whether sufficient evidence was presented to prove each element of the crime beyond a reasonable doubt. *See, e.g., Commonwealth v. Smolko,* 446 Pa.Super. 156, 162–64, 666 A.2d 672, 675 (1995).

With this in mind, we note that the testimony at trial established that, on the day of the murder, appellant and several cohorts conspired to sell a large quantity of drugs to the victim and the victim's friend. This was not the first time that such a transaction had occurred, and the parties were familiar with each other.

Mr. Edward Lee Clyburn, the victim's friend, remained in the vehicle during the transaction because he noticed that appellant was armed and feared that appellant planned to rob them. Mr. Clyburn warned the victim to forgo the sale, but the victim did not heed his advice and insisted on going through with the sale.

Mrs. Gloria Pittman, a local resident, saw appellant, the victim and a third man engaged in conversation across from her home. The victim carried a distinctive draw-string bag which contained approximately $20,000. The threesome then entered an abandoned building. Soon thereafter, Mrs. Pittman heard a gunshot and observed appellant and the third man flee the scene. At this time, appellant carried the same bag previously observed with the victim.

Acknowledging this testimony, appellant nevertheless avers that insufficient evidence was presented to convict him of first-degree murder. We disagree.

■ With respect to appellant's challenge to the veracity of Mrs. Pittman's testimony, we note that credibility determinations are made by the fact finder and that challenges thereto go to the weight, and not the sufficiency, of the evidence. We therefore decline appellant's invitation to adopt a test whereby the trial court must make a threshold determination of a witness's credibility and trustworthiness prior to the witness being qualified to testify. Appellant's brief at 13.

Indeed, were we to adopt this novel position, we would effectively usurp the role of the fact finder and be required to overrule the litany of well-reasoned caselaw which holds that the jury is free to accept some, none or all of the evidence. *See, e.g., Commonwealth v. Zewe,* 444 Pa.Super. 17, 22–26, 663 A.2d 195, 198–99 (1995); *Commonwealth v. Butler,* 436 Pa.Super. 321, 326–28, 647 A.2d 928, 931 (1994).

Appellant also claims that the evidence was insufficient to support his murder conviction because all that was established was that appellant "may have been present at the scene of a crime and fled thereafter." Appellant's brief at 14.

■ At the outset, we note that an eyewitness to any crime, including murder, has never been required to establish either that the crime occurred or that the defendant was culpable. Rather, a plethora of caselaw establishes that, provided the Commonwealth meets its burden of proof, circumstantial evidence alone may be used to convict one of a crime. *See, e.g., Commonwealth v. Chmiel,* 536 Pa. 244, 247–49, 639 A.2d 9, 11 (1994); *Commonwealth v. Griscavage,* 512 Pa. 540, 542–44, 517 A.2d 1256, 1257 (1986).

The above-related evidence established much more than mere presence and flight. Taken together, the witness's testimony proved that (1) appellant met the victim to consummate a drug deal; (2) appellant was armed; (3) appellant and the victim entered an abandoned building; (4) a gunshot was heard from inside the building; and (5) ap-

pellant fled the area while carrying the victim's possessions.

If believed, these facts prove that appellant had the motive and opportunity to kill the victim. Of course, when considering challenges to the sufficiency of the evidence, it is not the province of this Court to reweigh the evidence and reassess credibility determinations made by the factfinder.

We therefore hold that the Commonwealth proffered sufficient evidence to prove appellant guilty beyond a reasonable doubt of the crimes of murder, robbery and possession of an instrument of crime. Thus, prior counsel were not ineffective for failing to pursue this patently baseless and meritless claim. *See, e.g., Commonwealth v. Blount*, 538 Pa. 156, 162–64, 647 A.2d 199, 203 (1994); *Commonwealth v. Brown*, 538 Pa. 410, 420–22, 648 A.2d 1177, 1182 (1994).

Next, appellant avers that prior counsel were ineffective for failing to challenge the weight of the evidence via post-verdict motion and on direct appeal. This argument is likewise without merit.

■ As a general rule, weight of the evidence claims must first be posed to the trial court and cannot be considered for the first time on appeal. *See, e.g., Commonwealth v. Perez*, 444 Pa.Super. 570, 575–77, 664 A.2d 582, 585 (1995); *Commonwealth v. Cruz–Centeno*, 447 Pa.Super. 98, 106–08, 668 A.2d 536, 540 (1995). Such a challenge concedes that sufficient evidence was adduced to convict the defendant but that the verdict must nevertheless be overturned because the evidence was untrustworthy and unreliable. *Id.* It is not the function of an appellate court, which has only the cold record to review, to determine whether the evidence was credible. *Id.*

In situations such as the instant one, however, in which there is an allegation that the failure to present the weight issue to the trial court was the result of prior counsel's poor stewardship, a different approach must be taken by our appellate courts. As we recently explained:

> When a weight claim is raised for the first time on appeal, an appellate court may address and reject it only when there is

absolutely no record support for a defense verdict.

\* \* \* \* \*

When there is simply no record evidence which weighs in the defendant's favor, we would have to hold that for a trial court to find the verdict against the weight of the evidence would necessarily constitute an abuse of discretion.

*Perez*, 444 Pa.Super. at 577, 664 A.2d at 585. *See also Commonwealth v. Robinson*, 450 Pa.Super. 428, 430–32, 676 A.2d 249, 250 (1996).

■ We find the present case to be the type contemplated by the *Perez* and *Robinson* Courts and will thus address appellant's claim. Appellant does not present contradictory evidence presented at trial in his behalf. Nor does appellant claim that any Commonwealth witnesses testified in fundamentally inconsistent manners. Rather, appellant's challenge is directed solely at the veracity of Commonwealth witness Gloria Pittman. For example, appellant claims that "the community would be shocked by this verdict if it had access to the transcripts and knew that one of its own citizens was convicted and sentenced to life in prison based on the testimony of someone like Gloria Pittman." Appellant's brief at 15.

Our review of the record reveals that Mrs. Pittman testified at trial in a coherent and certain manner. Despite a rigorous cross examination in which Attorney Chappelle attempted to discredit the witness by questioning her in regard to, *inter alia*, her drug use on the day in question and her ability to identify with certainty strangers seen from her window across the street, Mrs. Pittman remained resolute in her testimony.

While appellant claims that the community would be shocked to find that one of its fellow citizens was incarcerated as a result of this testimony, we note that appellant was convicted by a jury of his peers, drawn from the same community that would now arguably be shocked at such a result. This Court's limited review does not permit or condone usurping the traditional jury func-

tion by engaging in a reweighing of the evidence.

Thus, we hold that, because there is no support in the record for a defense verdict, appellant's weight of the evidence issue is without arguable merit. Prior counsel cannot, therefore, be considered ineffective for failing to raise it. *See Blount; Brown* supra.

■ Finally, appellant claims that prior counsel were ineffective for failing to object to or raise the question of whether the trial court's jury instruction pertaining to accomplice liability was proper. Specifically, appellant avers that the charge failed to instruct the jury that, in order to find appellant guilty of murder as an accomplice, it must first determine that appellant shared the same specific intent to kill as the murderer.[1] We find that this assertion is belied by the record and appellant is thus entitled to no relief.

Prior to defining the elements of the degrees of murder and other charges with which appellant was charged, the court instructed the jury that it could find appellant guilty either as a principle or as an accomplice. The court then defined the nature of accomplice liability as follows:

> You may also find the defendant guilty of a crime without finding that he personally performed the action or engaged in conduct required in the commission of the crime. A defendant is guilty of a crime if he is an accomplice of another person who commits that crime. He is an accomplice if with the intent of promoting or facilitating commission of the crime, he solicits, commands, encourages, requests the other person to commit it or aids, agrees to aid or attempts to aid the other person in planning or committing it.
>
> You may find the defendant guilty of a crime on the theory that he was an accomplice as long as you are satisfied beyond a reasonable doubt that the crime was com-

mitted and that the defendant was an accomplice of the person who committed it. N.T. 5–1–90 at 17–18 (emphasis added).

Thereafter, the court proceeded to define the degrees of murder with which appellant was charged. When defining first-degree murder, the court instructed the jury that three elements must be established prior to finding appellant guilty:

> First, that Mr. Dodson is dead.
>
> Second, that the defendant killed him.
>
> Third, that the defendant did so with the specific **intent to kill and with malice**. A person has a specific intent to kill if he has a fully formed intent to kill and is conscious of his own intention.

*Id.* at 20–21 (emphasis added).

We find that the charges, as given, parallel those reviewed, and upheld, by our Supreme Court in *Commonwealth v. Thompson*, 543 Pa. 634, ——, 674 A.2d 217, 222–23 (1996), and *Commonwealth v. Chester*, 526 Pa. 578, 611–15, 587 A.2d 1367, 1384–85 (1991). In both *Thompson* and *Chester*, the Court held that the accomplice liability charge accurately reflected the controlling law because the charge referenced the intent element which was further defined in the jury instructions relative to the substantive crimes charged. *Id.*[2]

■ Therefore, consistent with the precedent established by our Supreme Court, we hold that the accomplice liability charge in the instant matter was proper. This holding necessarily obviates a determination that prior counsel were ineffective, for it is axiomatic that counsel cannot be ineffective for failing to raise a meritless issue.

Order affirmed.

---

1. We note that, although appellant was the only person charged with Mr. Dodson's murder, a third man was reported at the scene of the crime. Therefore, the court properly instructed the jury that it could find appellant guilty as an accomplice if it found that the uncharged third man committed the murder with the necessary intent and that appellant shared that state of mind.

2. Appellant's reliance upon *Commonwealth v. Huffman*, 536 Pa. 196, 638 A.2d 961 (1994), is misplaced. In *Huffman*, the accomplice liability portion of the jury charge was silent as to the accused's state of mind. Therefore, our Supreme Court held that the jury could have convicted appellant of murder without necessarily determining that he had the specific intent to kill. Conversely, the charge in the instant matter accurately detailed the intent element.